# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | | |
|---|---|---|
| **AMZAD LALANI,** | : | **CRIMINAL INDICTMENT NO.** |
| **Movant,** | : | **1:02-CR-155-JTC-5** |
| | : | |
| **v.** | : | |
| | : | |
| **UNITED STATES OF AMERICA,** | : | **CIVIL FILE NO.** |
| **Respondent.** | : | **1:06-CV-2474-JTC** |

| | | |
|---|---|---|
| **WENDY LALANI,** | : | **CRIMINAL INDICTMENT NO.** |
| **Movant,** | : | **1:02-CR-155-JTC-6** |
| | : | |
| **v.** | : | |
| | : | |
| **UNITED STATES OF AMERICA,** | : | **CIVIL FILE NO.** |
| **Respondent.** | : | **1:06-CV-2475-JTC** |

## ORDER FOR SERVICE OF REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

Attached is the Report and Recommendation of the United States Magistrate Judge, made in accordance with 28 U.S.C. § 636(b)(1) and this Court's Local Rule 72. Let the same be filed and a copy, together with a copy of this Order, be served upon counsel for the parties.

Within fourteen (14) days of service of this Order, a party may file written objections, if any, to the Report and Recommendation. *See* 28 U.S.C. § 636(b)(1)(C). Should objections be filed, they shall specify with particularity the alleged error or

AO 72A
(Rev.8/8
2)

errors made (including reference by page number to the transcript if applicable) and shall be served upon the opposing party.  The party filing objections will be responsible for obtaining and filing the transcript of any evidentiary hearing for review by the District Court.  If no objections are filed, the Report and Recommendation may be adopted as the opinion and order of the District Court and any appellate review of factual findings will be limited to a plain error review.  *United States v. Slay*, 714 F.2d 1093, 1095 (11th Cir. 1983).

The Clerk is **DIRECTED** to submit the Report and Recommendation with objections, if any, to the District Court after expiration of the above time period.

**IT IS SO ORDERED**, this the 5th day of May, 2010.

_____
**ALAN J. BAVERMAN
UNITED STATES MAGISTRATE JUDGE**

2

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| **AMZAD LALANI,** | : | **CRIMINAL INDICTMENT NO.** |
| **Movant,** | : | **1:02-CR-155-JTC-5** |
| | : | |
| **v.** | : | |
| | : | |
| **UNITED STATES OF AMERICA,** | : | **CIVIL FILE NO.** |
| **Respondent.** | : | **1:06-CV-2474-JTC** |
| | | |
| **WENDY LALANI,** | : | **CRIMINAL INDICTMENT NO.** |
| **Movant,** | : | **1:02-CR-155-JTC-6** |
| | : | |
| **v.** | : | |
| | : | |
| **UNITED STATES OF AMERICA,** | : | **CIVIL FILE NO.** |
| **Respondent.** | : | **1:06-CV-2475-JTC** |

## MAGISTRATE JUDGE'S ORDER AND
## FINAL REPORT AND RECOMMENDATION

Movants, Amzad and Wendy Lalani, brought these 28 U.S.C. § 2255 motions challenging their convictions and sentences entered in this Court under the above criminal docket number. [Doc. Nos. 499, 501.] On remand from the Eleventh Circuit Court of Appeals, District Judge Jack T. Camp referred this case to the undersigned Magistrate Judge to conduct an evidentiary hearing and issue a Report and Recommendation on the Lalanis' grounds for relief in which they contend that their trial counsel performed ineffectively by failing to pursue plea agreements.

[*See* Doc. No. 499, Mem. at 8-11; Doc. No. 501, Mem. at 24-27; Doc. No. 570, Opinion at 8; Doc. No. 573.]   For the reasons discussed below, the undersigned **RECOMMENDS** that relief is not warranted for either Mr. or Mrs. Lalani.

## I.   Background

The Grand Jury returned a 138-count indictment against Mr. and Mrs. Lalani and eleven other co-defendants, for conspiring to engage in the interstate transportation of stolen merchandise and for transporting that merchandise in interstate commerce, in violation of 18 U.S.C. §§ 2, 371, 2314, and 2315.  [Doc. No. 1.]  The Lalanis proceeded to trial represented by Marc Gordon.  [Doc. Nos. 293, 308.]  On September 17, 2003, the jury found the Lalanis guilty on all counts charged against them.  [Doc. Nos. 334, 336.]  The District Court sentenced Mr. Lalani to a 121-month term of imprisonment and sentenced Mrs. Lalani to a 63-month term of imprisonment.  [Doc. Nos. 419, 420.]  On appeal, the United States Court of Appeals for the Eleventh Circuit affirmed the Lalanis' judgments of conviction.  [Doc. Nos. 424, 425, 471.]

The Lalanis each filed a § 2255 motion.  [Doc. Nos. 499, 501.]  The Lalanis contended, among other things, that Mr. Gordon performed ineffectively by failing to enter plea negotiations or adequately advise them in regard to their decisions to plead guilty or go to trial.  [Doc. No. 499, Mem. at 8-11; Doc. No. 501, Mem. at 24-27.]

2

Mr. Lalani contended that (1) he asked Mr. Gordon to "look into the possibility of a plea agreement, which would benefit both him and his wife" and Mr. Gordon informed him that "a plea was not necessary because he was going to win the case" and failed to enter into plea negotiations with the government, (2) he asked Mr. Gordon to inform him of the exposure he would face by going to trial and Mr. Gordon did not accurately inform him of the strength of the evidence against him, and (3) had Mr. Gordon accurately informed him of the strength of the evidence against him, he would have pleaded guilty.  [Doc. No. 499, Mem. at 8-11.]  Mrs. Lalani asserted that, (1) contrary to Mr. Lalani's instructions, Mr. Gordon failed to enter into plea negotiations with the government; (2) Mr. Gordon failed to inform her or Mr. Lalani of "the plea offers extended by the government"; (3) Mr. Gordon failed to inform her accurately of her exposure at trial and the amount of evidence necessary to prove involvement in a criminal conspiracy; and (4) had Mr. Gordon accurately informed Mr. Lalani of the strength of the evidence against him, he would have pleaded guilty, and "most likely" the government would have dismissed the charges against her or offered her a misdemeanor plea, which she would have accepted.  [Doc. No. 501, Mem. at 24-26.]

The Court denied relief, finding, under *Strickland v. Washington*, 466 U.S. 668, 687 (1984), that Movants had failed to show prejudice.   [Doc. No. 520 at 16;

3

Doc. No. 522 at 24.]   The Court did not address whether counsel had performed deficiently, other than to find no deficiency by counsel for failing to inform Mrs. Lalani of an existing plea offer.  [Doc. No. 522 at 23.]   The Eleventh Circuit vacated and remanded for an "evidentiary hearing to determine whether there is a reasonable probability that the Petitioners would have accepted a plea offer had their counsel successfully pursued a plea offer from the government." [Doc. No. 570, Opinion at 8.] The Eleventh Circuit left it to this Court as to whether a hearing was necessary in regard to whether counsel performed deficiently.  [*Id.*]

## II.   <u>Discussion</u>

### A.   <u>The Hearing</u>

A hearing was held on October 29, 2009.  Bernita Malloy, Assistant United States Attorney and lead counsel in the case against Mr. and Mrs. Lalani, testified that at no time did her office offer a plea agreement to Mr. or Mrs. Lalani.  [Doc. No. 594 at 6, 26-27.]  Ms. Malloy testified that she "probably" had two conversations with Mr. Gordon regarding the possibility of Mr. and Mrs. Lalani pleading guilty.  [*Id.* at 7.] Ms. Malloy testified that, after the main defendant in the case, Mohammad Gaffar, and his wife pleaded guilty on March 17, 2003, she spoke with Mr. Gordon regarding the possibility of pleas for the Lalanis and that Mr. Gordon's position was that Mr. Lalani

4

was willing to plead guilty (to possibly the conspiracy count and one substantive count) if Mrs. Lalani would be allowed to plead guilty to a misdemeanor – a deal similar to what the Gaffars received.  [*Id.* at 6, 9, 12.]  Ms. Malloy stated that (1) the government's general negotiation position[1] was that Mrs. Lalani could "plead to one of the substantive counts or . . . to the conspiracy" and there was a possibility of Mr. Lalani pleading guilty to the conspiracy and a substantive count and (2) the plea negotiations broke down because her office would not agree to a misdemeanor for Mrs. Lalani when the evidence would support a felony conviction for her.  [*Id.* at 9, 16, 18-19, 22.]  William L. McKinnon, Jr., Ms. Malloy's supervisor, testified that the government considers a plea in every case in which a defendant is interested in pleading guilty, the government would have considered a plea for both the Lalanis (such as a plea by Mrs. Lalani to the felony counts), but he would not have approved a misdemeanor plea for Mrs. Lalani.  [*Id.* at 57-58, 61-62.]

Mr. Lalani testified that, after the Gaffars pleaded guilty, he believed that Mr. Gaffar's testimony (and other co-defendants' testimony) would be damaging to him, he and Mrs. Lalani asked Mr. Gordon if he could look into a possible plea, and

---

[1]      Ms. Malloy unequivocally stated that no actual plea offer, written or verbal, was ever on the table from the government for Mr. Gordon to take back to the Lalanis.  [Doc. No. 594 at 26-27.]

Mr. Gordon told him "we are not there yet." [*Id.* at 29-30.] Mr. Lalani testified that Mr. Gordon never spoke with him (1) regarding any plea conversations/negotiations between he and the government or (2) the potential sentence he faced by going to trial instead of pleading guilty. [*Id.* at 32, 36.] Mr. Lalani stated that, had Mr. Gordon pursued a plea agreement, he would have pleaded guilty to conspiracy and every substantive charge in the indictment and that he told Mr. Gordon that he would be willing to plead guilty to every charge. [*Id.* at 28-29, 32-33, 35.] When asked whether he would have pleaded guilty if his plea agreement was tied to Mrs. Lalani pleading guilty to a felony, Mr. Lalani responded, "I would accept a plea so my wife can be home with my kids sooner" and answered affirmatively that he wanted her to receive a very low sentence. [*Id.* at 33, 35.] Mr. Lalani also testified that during an approximate two-year time frame before trial, he spoke with Mr. Gordon about "maybe twice a week – two weeks, every two weeks" and affirmatively agreed that Mr. Gordon did discuss with him the evidence that would be used against him at trial. [*Id.* at 37.]

Mrs. Lalani testified that, after the Gaffars pleaded guilty, she and Mr. Lalani believed their chances at trial were slim and asked Mr. Gordon to look into the possibility of their pleading guilty – "we asked is there a possibility of getting something similar to what [the Gaffars] received" – "can we get something in that range

6

similar or a plea agreement," the best possible offer.  [*Id.* at 41-42, 47, 52.]  Mrs. Lalani testified that Mr. Gordon never spoke with her regarding (1) any plea conversations/negotiations between he and the government, (2) the potential sentence she faced by going to trial instead of pleading guilty, or (3) a potential plea offer from the government.  [*Id.* at 43-45.]  Mrs. Lalani further testified that she would have been willing to plead guilty to a felony and all the crimes alleged in the indictment, and that Mr. Gordon knew this.  [*Id.* at 45, 47, 49.]  Mrs. Lalani testified that they spoke with Mr. Gordon "fairly often" before trial, she had conversations with Mr. Gordon regarding the substance of the testimony from witness statements in the case, but she did not discuss with him those witnesses' proposed testimony (apparently their proposed trial testimony).  [*Id.* at 49, 53-54.]

Mr. Gordon testified that he talked with the Lalanis "many, many times" before trial and explained to them the elements that the government would have to prove on the conspiracy and substantive counts; went over with them the "extensive" evidence page by page and the expected testimony of the co-defendants; discussed with them the strengths and weaknesses of the case; and discussed with them the sentences that the Gaffars faced based on their guilty pleas and possible sentences the Lalanis were facing in going to trial.  [*Id.* at 66-68, 70-74, 87-88.]  Mr. Gordon testified that neither Mr. or

7

Mrs. Lalani asked him to look into the possibility of a plea agreement and that Mrs. Lalani had never told him she was prepared to plead guilty to a felony. [*Id.* at 74, 76, 83.] Mr. Gordon testified that (1) he told the Lalanis that the government may offer them a deal similar to the one the Gaffars received, (2) neither of the Lalanis did more than simply acknowledge his statement, and (3) they continued, pro-actively, to build up their defense. [*Id.* at 74.] Mr. Gordon testified that the Lalanis' consistent position was that they had not known the property was stolen and had not been involved in any criminal enterprise, and that the Lalanis consistently were pro-active in preparing for trial. [*Id.* at 74-75, 77-78, 82, 92.] Mr. Gordon testified that he had a brief plea conversation with Ms. Malloy, during which Ms. Malloy inquired whether the Lalanis would consider plea offers similar to the Gaffars, and he responded negatively based on the Lalanis' prior lack of interest and "the fact that they had . . . never wavered or vacillated in their position that they were not involved in any illegal enterprise." [*Id.* at 77-78.] Mr. Gordon further testified that there would be no reason for him not to tell the Lalanis about the plea conversation he had with Ms. Malloy, but he could not specifically remember whether he had and reiterated that they never expressed an interest in entering plea agreements similar to the Gaffars. [*Id.* at 78-81.] Mr. Gordon testified that Mrs. Lalani had not indicated that she was willing to plead to a

8

misdemeanor and did not believe that her husband should plead to the same offer that Mr. Gaffar had received.  [*Id.* at 92-93.]

### B.   Parties' Arguments

As indicated above, prior to the hearing, the parties argued that Mr. Gordon performed ineffectively by failing to enter plea negotiations, inform them of the plea offers extended by the government, or adequately inform them in regard to their decisions to plead guilty or go to trial.  [Doc. No. 499, Mem. at 8-11; Doc. No. 501, Mem. at 24-27.]

In his post-hearing brief, Mr. Lalani asserts that Mr. Gordon performed deficiently by failing to inform him of the government's position and obtain a plea offer when the government was willing to discuss a plea offer and would have entertained an appropriate offer by Mr. Lalani to plead guilty.  [Doc. No. 595 at 3, 5-6.][2]

---

[2]     Mr. Lalani states that Mr. Gordon's deficient representation in regard to plea matters was caused by his conflict of interest in representing both Mr. and Mrs. Lalani.  [Doc. No. 595 at 6-8.]   Mrs. Lalani also contends that Mr. Gordon's deficient representation in regard to plea matters was caused by his conflict of interest in representing both Mr. and Mrs. Lalani.  [Doc. No. 596 at 10-13.] The government contends that a conflict-of-interest claim is not properly before the court. [Doc. No. 598 at 3 n.1.]  In reply, Mr. Lalani states that he is not trying to raise a new claim of deficiency by Mr. Gordon, but is simply arguing that the conflict shows "*why*" Mr. Gordon was deficient in regard to pursuing a plea offer and explaining plea options. [Doc. No. 605 at 6.]  Mrs. Lalani replies that Mr. Gordon's alleged conflict of interest is relevant in determining the effectiveness of Mr. Gordon's pursuit of a plea deal.

9

Mr. Lalani argues he has shown prejudice because (1) his and Mrs. Lalani's hearing testimony shows that they told Mr. Gordon to pursue plea negotiations, (2) Ms. Malloy's testimony supports that he expressed to Mr. Gordon that he wanted to plead guilty, and (3) he testified that he would have pleaded guilty.  [*Id.* at 3-4.]

In her post-hearing brief, Mrs. Lalani argues that Mr. Gordon performed deficiently because he failed to inform her of the government's position and negotiate a favorable deal when the government was willing to discuss a plea offer and would have entertained an offer by Mrs. Lalani to plead guilty to the conspiracy or a substantive count.  [Doc. No. 596 at 2, 5.]  Mrs. Lalani argues she has shown prejudice because (1) she testified that she was ready and willing to plead guilty to a felony, (2) her and Mr. Lalani's hearing testimony shows that they told Mr. Gordon to pursue plea negotiations, and (3) Ms. Malloy's testimony supports her testimony that she was willing to plead guilty.  [*Id*. at 6-8.]

The government argues that Movants' initial argument that Mr. Gordon was deficient in neglecting to pursue plea negotiations fails because the evidence shows that

---

[Doc. No. 603 at 3.]  The issue before the Court is whether Mr. Gordon provided effective assistance of counsel in regard to the Lalanis' plea decisions, and the Court does not address a separate claim that Mr. Gordon was deficient based on a conflict of interest.

AO 72A
(Rev.8/8
2)

Mr. Gordon did in fact participate in plea discussions.  [Doc. No. 598 at 4.]  The government further argues that Movants' evolved argument that Mr. Gordon was deficient because he could have "done more" in pursuing and obtaining plea offers fails to show unreasonable or deficient performance in light of the fact that Mr. and Mrs. Lalani had expressed to him no interest in pleading guilty.  [*Id.* at 5 n.2.]  As to Mr. Gordon's failure to inform the Lalanis of the government's position, the government argues that, even if Mr. Gordon believed that the government said it would accept a Gaffar-type plea for Mr. and Mrs. Lalani, the testimony of Ms. Malloy and Mr. McKinnon shows that such a plea was not a possibility, and therefore, the Lalanis cannot show prejudice.  [*Id.* at 9-10].  The government argues that the Lalanis' own after-the-fact testimony is not enough to show any reasonable probability that they would have accepted a plea prior to trial.  [*Id.* at 11-17.]

In reply on the deficiency prong, Mr. Lalani asserts that Mr. Gordon was deficient in failing to pursue any plea agreements and his brief conversations with Ms. Malloy do not qualify as pursuit of plea agreements.  [Doc. No. 605 at 3.]  Mr. Lalani asserts that reasonable counsel would have pursued a concrete plea offer.  [*Id.*]  Mr. Lalani further argues that Mr. Gordon was deficient for not informing him regarding the government's position.  [*Id.* at 4-5.]  As to prejudice, Mr. Lalani argues

11

that the court should (1) credit his and Mrs. Lalani's testimony that they asked Mr. Gordon to pursue a plea deal and desired to plead guilty and (2) discount Mr. Gordon's testimony because Mr. Gordon may have misremembered events in that "older people[]" such as Mr. Gordon, who "is likely 60 years or older," "tend to remember their past choices in a positive way." [*Id.* at 7-8.][3] Mrs. Lalani replies that Mr. Gordon was deficient for failing to relate to her the government's position that it would entertain a guilty plea to a substantive count or to the conspiracy and that she was prejudiced because she would have pleaded guilty. [Doc. No. 603 at 4.] Mrs. Lalani additionally argues that the testimony by her, Mr. Lalani, and Ms. Malloy supports her contention that prior to trial she demonstrated a willingness to plead guilty. [*Id.* at 5.]

### C.   **Law and Recommendation**

Section 2255 of Title 28 allows a district court to vacate, set aside, or correct a federal sentence that was imposed in violation of the Constitution or laws of the United

---

[3] Mr. Lalani also argues that the Court's preliminary finding at the evidentiary hearing – that the Lalanis were not interested in a guilty plea "because they maintained their innocence throughout the proceeding" – is the very mistake that caused the Eleventh Circuit to remand the case. [Doc. No. 605.] The Court was referring to the Lalanis' consistent representations to Mr. Gordon (as related by Mr. Gordon), not to the Lalanis' litigation posture of innocence, which, as held by the Eleventh Circuit, does not show that they would not have pleaded guilty.

12

States or was imposed by a court without jurisdiction, exceeds the maximum sentence authorized by law, or is otherwise subject to collateral attack.  28 U.S.C. § 2255. Ineffective assistance of counsel claims generally may be raised on collateral review in order to allow for adequate development and presentation of the facts pertinent to such a claim.  *Massaro v. United States*, 538 U.S. 500, 505-09 (2003).  A criminal defendant possesses a Sixth Amendment right to "reasonably effective" legal assistance.  *Strickland*, 466 U.S. at 687.  To show constitutionally ineffective assistance of counsel, a petitioner must establish that (1) counsel's representation was deficient and (2) counsel's deficient representation prejudiced him.  *Id.* at 690-92.  This Court may resolve an ineffective-assistance-of-counsel claim based on either of the above prongs.  *Atkins v. Singletary*, 965 F.2d 952, 958-59 (11th Cir. 1992).

Under the first prong, a petitioner must show that "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance."  *Strickland*, 466 U.S. at 690.  The court must be "highly deferential," and must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.' "  *Id.* at 689 (internal citation omitted).

13

A "strategic decision by defense counsel will be held to constitute ineffective assistance 'only if it was so patently unreasonable that no competent attorney would have chosen it.' " *Kelly v. United States*, 820 F.2d 1173, 1176 (11th Cir. 1987) (citation omitted). "By 'strategy,' we mean no more than this concept:  trial counsel's course of conduct, that was neither directly prohibited by law nor directly required by law, for obtaining a favorable result for his client." *Chandler v. United States*, 218 F.3d 1305, 1314 n.14 (11th Cir. 2000).  Whether a strategy might have been reasonable is an objective inquiry; we do not ask whether the trial attorney "actually made a thought-out decision," but ask "whether some reasonable attorney could have acted that way." *Id.* at 1327 n.41.

Under the second prong, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.  The habeas petitioner has the burden of affirmatively proving prejudice, and a "conceivable effect" on the proceedings does not show prejudice. *Gilreath v. Head*, 234 F.3d 547, 551 (11th Cir. 2000).

AO 72A
(Rev.8/8
2)

"Counsel has an obligation to consult with his client on important decisions and to keep him informed of important developments in the course of the prosecution." *Diaz v. United States*, 930 F.2d 832, 834 (11th Cir. 1991) (citing *Strickland*, 466 U.S. at 688). Counsel performs deficiently by failing to inform his client of an existing plea offer. *See id.* (citing *Johnson v. Duckworth*, 793 F.2d 898, 902 (7th Cir. 1986)). However, counsel's failure to inform a defendant regarding plea negotiations is not, necessarily, deficient. *Cf. Tanks v. United States*, No. 94-3849, 1995 WL 46339, *2 (6th Cir. Feb. 6, 1995) (finding that allegation that counsel failed to inform defendant of ongoing plea negotiations failed to show an unprofessional error by counsel). Constitutionally sufficient representation under *Strickland* does not impose on the defense bar a requirement "that every communication from the government must be passed on to a defendant in haec verba [verbatim]." *Berthoff v. United States*, 140 F. Supp. 2d 50, 58 (D. Mass. 2001) (holding that counsel was not deficient for failing to inform defendant of prosecutor's letter (an invitation to negotiate) that was not a plea offer and that did not add to the information that defendant already possessed), *declined to follow on other grounds, Dodd v. United States*, 365 F.3d 1273, 1277 (11th Cir. 2004). Thus, based on *Tanks* and *Berthoff*, when there are tentative plea negotiations, but there is no firm plea offer, counsel's duty to keep his client informed

15

regarding the negotiations must be considered in light of their importance "in the course of the prosecution." *Diaz*, 930 F.2d at 834.

To show prejudice based on counsel's performance in regard to a not-guilty plea, the movant "must show that there is a reasonable probability that, but for counsel's errors, he would have pleaded guilty and would not have insisted on going to trial." *Coulter v. Herring*, 60 F.3d 1499, 1504 (11th Cir. 1995).  A pre-conviction desire to plead guilty provides some evidence regarding the probability that the movant would have pleaded guilty.  *See Diaz*, 930 F.2d at 835.  However, "after the fact testimony concerning his desire to plead" is insufficient, without more, to show a reasonable probability that he would have accepted the plea offer.  *Id.* (finding it significant that the defendant "cite[d] no evidence to indicate that prior to his conviction he expressed any desire to plead guilty"); *Cook v. United States*, 189 Fed. Appx. 927, 931 (11th Cir. 2006) (unpublished) (holding that defendant's after-the-fact assertion that, but for counsel's erroneous advice regarding the charges against him, he would have pleaded guilty, was insufficient to meet the reasonable probability standard or show prejudice).

Weighing the parties' testimony and credibility, the Court finds the following. Based on Mr. Gordon's testimony, Mr. Gordon informed the Lalanis regarding the strengths and weaknesses of the evidence against them and adequately informed them

regarding the possible penalties they faced in going to trial versus pleading guilty.  In light of Mr. Gordon's testimony and in light of the Lalanis' testimony regarding their numerous meetings with Mr. Gordon, the Court finds not credible the Lalanis' testimony to the contrary.  The Lalanis' testimony demonstrates that they had discussions with Mr. Gordon following the Gaffars' guilty pleas as to the range of sentences the Lalanis faced upon conviction.

Based on Mr. Gordon's testimony, the Lalanis' consistently  represented to Mr. Gordon that they had not been involved in any criminal enterprise and the Lalanis consistently and pro-actively prepared for trial.  In fact, the Court finds false Mrs. Lalani's hearing testimony that she told Mr. Gordon that she wished to plead guilty, since at the hearing before me, Mrs. Lalani was still denying that the government's evidence and the witnesses' statements implicated her.  [Doc. 594 at 54-55].  That is, the Court does not find credible Mrs. Lalani's testimony that she told Mr. Gordon that she wanted to plead guilty because she denied that the *Jencks* Act statements she reviewed implicated her.  [*See id.* at 55 (". . . I mean I had very limited involvement. . .  I wasn't in the majority of the paperwork. . .  [T]he people who testified, none of them had met me.  None of their statements included me.  If I'm not mistaken Mr. Gaffar's statement on the stand was I can only assume that Mrs. Lalani

17

because she's sitting next to him.")].  That testimony is not indicative of a person who advised her lawyer before trial that she wanted to plead guilty to all of the charges in the indictment.

Further, based on Mr. Gordon's and the Lalanis' testimony, Mr. Gordon and the Lalanis discussed the Gaffars' plea deal and the possibility of such a plea for the Lalanis.  Based on the Lalanis', Mr. Gordon's, and Ms. Malloy's testimony, the Lalanis' expressed some, but minimal, interest in such a plea and Ms. Malloy was aware of that interest.  Based on Mr. Gordon's, Ms. Malloy's, and Mr. McKinnon's testimony, there were some plea discussions; however, (1) a Gaffar-type plea was never the government's negotiation position, was never on the table for the Lalanis, and was not a possibility; (2) the possibility of Mr. Lalani pleading to the conspiracy and a substantive count was the government's negotiation position, but was never on the table as a firm offer; and (3) the possibility of Mrs. Lalani pleading to the conspiracy or a substantive count was the government's negotiation position, but was never on the table as a firm offer.  Based on Mr. Gordon's and the Lalanis' testimony, Mr. Gordon did not clearly inform the Lalanis regarding the government's negotiation position.

Based on (1) Mr. Gordon's testimony regarding the Lalanis' consistent representations that they were not guilty of a criminal enterprise and their pro-active

trial preparation, and (2) Mr. Lalani's testimony that he wanted Mrs. Lalani to receive a very low sentence, the Court finds not credible the Lalanis' assertions that they told Mr. Gordon they wanted to plead guilty to all counts and they would have pleaded guilty to all counts or to the counts described in the government's negotiation position.

Based on the above credibility findings, the Court finds that neither Mr. Lalani nor Mrs. Lalani has demonstrated that Mr. Gordon performed deficiently in advising them on plea matters.  Ms. Malloy was aware of the Lalanis' minimal interest in a Gaffar-type plea deal, and even if Mr. Gordon performed deficiently in relating that interest to the government, the Lalanis' attempt to demonstrate that such deficiency resulted in prejudice fails because the government would not have agreed to a Gaffar-type deal.  Further, even if Mr. Gordon had obtained from the government a firm offer in line with their negotiation position, the hearing testimony does not demonstrate with any reasonable probability that the Lalanis would have accepted such an offer.  Further, in the circumstances of this case, where the Lalanis had consistently expressed to Mr. Gordon that they were not guilty of participating in a criminal enterprise, the Court finds that Mr. Gordon did not perform unreasonably in failing unequivocally and clearly to inform the Lalanis of the government's negotiation position (not a plea offer). *See Chandler*, 218 F.3d at 1327 n.41 (stating that the court must ask "whether some

reasonable attorney could have acted that way"); *Diaz*, 930 F.2d at 834 (indicating that counsel's duty to inform his clients of developments should be considered in light of their importance in the course of the proceedings). Moreover, to the extent that Mr. Gordon performed deficiently in failing clearly to inform the Lalanis of the government's negotiation position, as stated above, there is no prejudice because the hearing testimony does not support a reasonable probability that the Lalanis would have pleaded guilty in accord with the government's position. The Lalanis' after-the-fact insistence that they would have pleaded guilty – considered together with their consistent representations to Mr. Gordon that they were not guilty of a criminal enterprise, their pro-active trial preparation, Mrs. Lalani's denials that the pretrial discovery implicated her (thus undermining her claim that Mr. Gordon was told the Lalanis wanted to plead guilty), and their minimal interest in a Gaffar-type plea – is insufficient to show, with any reasonable probability, that either of them would have accepted a plea offer, either to all counts or to counts consistent with the government's negotiation position.

Accordingly, it is **RECOMMENDED** that the Court deny relief based on the Lalanis claim that Mr. Gordon provided ineffective assistance in regard to their decision to proceed to trial rather than plead guilty.

20

AO 72A
(Rev.8/8
2)

## III.   <u>Certificate of Appealability ("COA")</u>

Pursuant to Rule 11 of the Rules Governing § 2255 Cases, "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. . . .  If the court issues a certificate, the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." Section 2253(c)(2) of Title 28 states that a certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." A substantial showing of the denial of a constitutional right "includes showing that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v . McDaniel*, 529 U.S. 473, 483-84 (2000) (internal quotations omitted).  A petitioner need not "show he will ultimately succeed on appeal" because "[t]he question is the debatability of the underlying constitutional claim, not the resolution of that debate." *Lamarca v. Sec'y, Dep't of Corr.*, 568 F.3d 929, 934 (11th Cir. 2009) (citing *Miller-El v. Cockrell*, 537 U.S. 322, 337, 342 (2003)).

The undersigned recommends that a COA should be granted on Mr. and Mrs. Lalanis' grounds claiming that counsel provided ineffective assistance on

21

Movants' decisions to proceed to trial rather than pleading guilty – it is reasonably debatable (1) whether counsel was deficient in failing clearly to inform Movants of the government's bargaining position in regard to a possible plea deal and (2) whether Movants' minimal interest in an unavailable plea deal is sufficient to show a reasonable probability that they would have pleaded guilty to a potentially available plea deal – as revealed in the government's bargaining position.  *See United States v. Battle*, 291 F. Supp. 2d 1367, 1381 (N.D. Ga. 2003) (Evans, J.) (COA granted where  issue turned on court's credibility determinations).

**IV.**  **Conclusion**

For the foregoing reasons,

**IT IS RECOMMENDED** that Mr. Lalani's § 2255 motion, [Doc. No. 499], and Mrs. Lalani's § 2255 motion, [Doc. No. 501], be **DENIED**.

**IT IS FURTHER RECOMMENDED** that a COA be granted on Mr. and Mrs. Lalani's grounds claiming that counsel provided ineffective assistance on their decisions to proceed to trial rather than plead guilty – it is reasonably debatable (1) whether counsel was deficient in failing clearly to inform Movants of the government's bargaining position in regard to a possible plea deal and (2) whether Movants' minimal interest in an unavailable plea deal is sufficient to show a reasonable

22

probability that they would have pleaded guilty to a potentially available plea deal – as revealed in the government's bargaining position.

The Clerk is **DIRECTED** to terminate the referral to the undersigned Magistrate Judge.

**IT SO RECOMMENDED and DIRECTED**, this 5th day of May, 2010.

_____
**ALAN J. BAVERMAN**
**UNITED STATES MAGISTRATE JUDGE**

23